COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Lorish
Argued at Richmond, Virginia

RASHAD ISAAC WYCHE

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 1040-22-2                  JUDGE ROBERT J. HUMPHREYS
                                                DECEMBER 5, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Lynn S. Brice, Judge

Kevin Purnell (Kevin D. Purnell, PLLC, on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Following a jury trial, Rashad Isaac Wyche was convicted of malicious wounding,

abduction, and two counts of strangulation. He challenges the sufficiency of evidence, asserting

that the evidence failed to prove "that the crimes occurred at the location and/or that [he] was at the

location and/or the perpetrator."

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

In August 2021, L.W. and Wyche had been married for approximately one year. The marriage was turbulent, marked with allegations of infidelity and episodes of physical violence. On June 28, 2021, L.W. sought a protective order and took out assault charges against Wyche. In early July 2021, L.W. told Wyche to move out of her townhome. Wyche moved out, but he and L.W. continued to text each other.

On the evening of August 11, 2021, Wyche texted and called L.W., explaining that he had been struck by a car the night before "on Nine Mile Road" and that he had "scrapes and bruises" on his arm and leg. Wyche told L.W. that he wanted to see her. He texted L.W. from 6:48 p.m. on August 11, 2021, until after 12:30 a.m. on August 12, 2021. In his text messages, Wyche accused L.W. of "stealing" $10,000 from his unemployment benefits and having a man with her in her home. When L.W. denied that she had a man with her, Wyche claimed, "I bet you if I knocked on your door it's a different situation." L.W. reluctantly agreed Wyche could visit for an hour if he could find a ride. Wyche replied that he had his "own wheels," and at 12:37 a.m., he texted that he was on the way. He texted, "[M]aybe by the time I get there, he'll be gone."

L.W. thought Wyche was "playing games" and would not follow through with the visit. But Wyche texted her at 12:46 a.m. and told her he was at her door. When he entered L.W.'s townhome, he was limping. L.W., a student in night school, sat down on the couch where she had been working on her electronic tablet. Wyche raised his voice and accused L.W. of sabotaging his relationship with his daughter and stealing his unemployment check. When L.W. asked him to leave, Wyche closed the front door, pocketed L.W.'s car keys, and retorted that L.W. had promised him an hour visit. Wyche tried to seize L.W.'s tablet. When the couple began "tussling" over the tablet, a physical altercation ensued.

Wyche, who was six feet three inches tall and weighed approximately 200 pounds, "punch[ed]" L.W. repeatedly. He spit on her, choked her, and bit her on the forehead. Grabbing her by the hair, he ripped out sections by the root, leaving bald patches on her scalp. L.W. briefly extricated herself and fled toward the interior stairs, but Wyche intercepted her and renewed his assault, punching and choking her. He choked L.W. with both hands so forcefully that she could not breathe. When L.W. tried to "bang" on the interior wall to alert her neighbor, Wyche threatened to break her arm.

L.W. briefly escaped the townhome and knocked on a neighbor's door for help, but no one answered. Wyche followed her and dragged her by her dreadlocks back into the townhome. He resumed his assault, punching her, biting her, and again choking her with such force she was unable to breathe. Wyche stayed at L.W.'s townhome until 7:00 a.m. the following morning. When he exited the front door, she saw him drive away on a scooter. L.W. texted a friend a picture of her facial injuries at 7:16 a.m., explaining, "He had me trap[p]ed in the house. He final[l]y left. Heading to er." L.W. drove herself to the hospital and asked her friend to call 911.

At the hospital, Dr. Kory Magyar treated L.W.'s injuries. Dr. Magyar noted that the left side of L.W.'s face exhibited "significant swelling" and that one eye was "almost swollen shut." Her left eye also showed signs of "subconjunctival hemorrhag[ing]," or bleeding inside the eye. L.W. told Dr. Magyar that her husband had assaulted her "all throughout the night." She stated that she "wasn't allowed to leave the house" and that when she attempted to flee, "she was drug [sic] back." L.W. reported that Wyche hit her "multiple times in the face," "choked" her, "spit on" her, and "tried to break her arm." Dr. Magyar noted that L.W. had dried blood on her lips and her shirt. Although Dr. Magyar did not document any "bite wound[s]," nurse practitioner Crystal Corbett noted broken skin on her forehead, as well as soft tissue swelling on L.W.'s neck. L.W. told Corbett that her forehead injuries occurred when her husband bit her. Corbett

documented multiple injuries to L.W.'s mouth, face, shoulder, arm, and back, all of which L.W. attributed to her husband.

Officer A. Thomas responded to the hospital at 7:46 a.m. on August 12, 2021, and photographed L.W.'s injuries. Later that day, he visited L.W. at her apartment and provided her with a copy of a protective order. Officer Thomas did not investigate the scene or collect physical evidence at that time because his senior officer was responsible for deciding "the next steps for . . . further investigation."

The following day, forensic nurse Bethany Porter interviewed L.W. L.W. told Porter that her husband had called and texted her Wednesday night, asking to see her. Wyche claimed he needed L.W., a medical assistant student, to "tend to [his] wounds" after a car struck him. After L.W. agreed to a one-hour visit, Wyche arrived after midnight and proceeded to "kick[] [her] butt." She told Porter that Wyche choked her on the steps as she "begg[ed] for air" and threatened to break her arm if she "banged" on the wall for help. L.W. reported that she escaped briefly and ran to a neighbor's house, but her husband grabbed her by the hair and "dragged [her] back" into the townhome. Once inside, Wyche resumed the assault, "punching" and choking L.W. and biting her forehead. When she told Wyche she could not breathe, he retorted, "Why should I care if you can breathe? You took my breath away." L.W. stated that Wyche did not leave until the following morning.

Wyche was arrested on August 17, 2021. Officer Thomas observed Wyche at police headquarters on the day of his arrest; Wyche was walking normally and had no apparent injuries.

Wyche's cousin, Michael Ford, and his sister, Renise Massenburg, testified on his behalf. Ford testified that Wyche stayed in a shed behind Ford's house on Stockton Street "sometime in August of 2021." As Ford was leaving for work "early" one morning in August, he noticed Wyche's scooter had been damaged. Ford was angry because he had helped Wyche buy the

scooter. When he confronted Wyche, Ford discovered that Wyche was injured. Ford repaired the scooter with tape.

Ford maintained that Wyche never left the house during his stay. Ford conceded, however, that he, Ford, left his home for work each day around 7:30 or 8:00 in the morning and returned home sometime between 5:00 p.m. and 7:00 p.m. Ford also agreed that he went to bed each night between midnight and 1:00 a.m. Although Ford stated that Wyche "looked like he couldn't really move too much," he admitted that Wyche left the day after Ford repaired the scooter and did not return. When the police arrived a few days later, Ford denied knowing Wyche. After the police pressed him, however, he admitted that he did know Wyche, but that Wyche "hadn't been there in a couple days."

Massenburg testified that Wyche stayed with her "about a week" before August 17, 2021, and when he arrived, the "taped up" scooter was with him and was out of gas. She maintained that, due to his injuries, Wyche "wasn't able to move fast" and she had to do everything to care for him. She stated that she stayed at home with him except to run brief errands. Massenburg admitted that she never told the police that she could provide an alibi for her brother.

At the conclusion of the evidence, Wyche moved to strike the charges. He asserted that L.W.'s testimony was not credible due to her convictions for felonies and crimes involving moral turpitude. In addition to L.W.'s criminal history, Wyche maintained that her testimony was not credible because of some inconsistencies in her recount of the events and because his recent injuries and the damage to his scooter rendered him incapable of committing the offenses. Moreover, Wyche maintained that defense witnesses provided him with an alibi. The circuit court denied his motion, ruling that the credibility of the witnesses was an issue for the fact finder. The jury found Wyche guilty of malicious wounding, abduction, and two counts of strangulation. Wyche made a motion to set aside the jury's verdict, arguing that the victim's

testimony was legally insufficient to establish that Wyche was the perpetrator. The court denied the motion. Wyche appeals.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Wyche contends that the evidence was insufficient to support his convictions because L.W.'s testimony identifying him as the perpetrator was inherently incredible.[1] He stresses that no

---

[1] The Commonwealth argues that Wyche did not sufficiently preserve this issue for appeal in accordance with Rule 5A:18. The Commonwealth states that before the circuit court Wyche only argued the victim lacked credibility because of her criminal record and the inconsistencies in her testimony. The Commonwealth asserts these arguments do not adequately preserve for appeal a challenge based on the legal sufficiency of the evidence due to a witness's inherent incredibility.

While Wyche's counsel did not describe the victim's testimony as "inherently incredible" in the circuit court, it was his argument that L.W. should not be believed and that a finding that Wyche was at the crime scene and the perpetrator based on L.W.'s testimony "would be inconsistent with the law." He made these arguments in his motion to strike and motion to set aside the jury verdict, thereby challenging the legal sufficiency of the evidence. He put the circuit court on notice of the argument that he now makes before this Court; therefore, we find the argument was preserved in accordance with Rule 5A:18. *See Brown v. Commonwealth*, 8

physical evidence linked him to the crimes and that based on his recent scooter accident he was physically incapable of the sustained assault described by L.W. Wyche also maintains that the evidence proved his mobility was "compromised" because the scooter, his means of transportation, had been damaged when he was struck by a car. He also asserts that Ford and Massenburg provided him with an alibi. In short, Wyche argues that no rational fact finder could have accepted L.W.'s testimony over that of his witnesses, emphasizing as well L.W.'s numerous felony convictions and crimes of moral turpitude. We disagree.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009). This Court gives "deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." *Id.* Thus, this Court must accept "the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 71 (1999)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Although Wyche claims that L.W.'s testimony was impeached by her criminal record, "the mere fact that a witness' testimony may have been impeached does not necessarily render the testimony inherently incredible." *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022). Indeed, "evidence with some element of untrustworthiness is customary grist for the [fact finder's] mill."

---

Va. App. 126, 131 (1989) ("The laudatory purpose behind Rule 5A:18 . . . is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.").

*Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). "So long as a witness deposes as to facts[,] which, if true, are sufficient to maintain their verdict," and "the trier of the facts sees fit to base the verdict upon that testimony[,] there can be no relief in the appellate court." *Id.* (first alteration in original).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

Here, the record demonstrates that Wyche texted L.W. from 6:48 p.m. on August 11, 2021, through 12:46 a.m. on August 12, 2021, and asked to visit her that evening. Consistent with L.W.'s testimony, Wyche's texts reveal that he traveled to her home on the night of her assault, arriving after midnight. Although Wyche's scooter was damaged in an accident, nothing in the record indicates that it was inoperable. To the contrary, the record establishes that the scooter was outside Ford's home on Stockton Street immediately after the accident, allowing the jury to conclude that Wyche drove it there from the site of his accident on Nine Mile Road. Moreover, based on Officer Thomas's testimony that Wyche appeared uninjured only a few days after his accident, the evidence reasonably supported the conclusion that Wyche's injuries were not sufficiently serious to prevent him from operating the scooter. Wyche's lack of serious injury, combined with his large physique, provided further evidence that Wyche was capable of inflicting the injuries sustained by L.W. on August 12, 2021.

L.W.'s testimony identifying Wyche as her assailant was corroborated by her accounts to medical care providers immediately after the incident. Furthermore, Ford testified that Wyche disappeared shortly after the offenses were committed, permitting a rational inference that he fled because he was guilty of the offenses. *See Lucas v. Commonwealth*, 75 Va. App. 334, 347 (2022) ("Evidence of flight from authorities that occurred days, or even months, after a crime is admissible, as '[a]ny flight at a time when it may be to avoid arrest, prosecution, or confinement tends to show a consciousness of guilt.'" (alteration in original) (quoting *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002))). Finally, although Ford and Massenburg testified that Wyche stayed with them shortly after his accident, neither of them specifically accounted for his whereabouts in the early morning hours of August 12, 2021. Ford stated that he typically went to bed between midnight and 1:00 a.m. and left for work at 7:30 a.m., and L.W. testified that Wyche arrived after midnight and left by 7:00 the next morning. Massenburg could not recall the specific date that Wyche began staying with her, other than it was "about a week" before August 17. A rational fact finder could conclude that soon after Wyche attacked L.W., he left Ford's home and fled to his sister's house. In any event, because Ford and Massenburg were related to Wyche, a rational fact finder could conclude that they were biased and reject their alibi testimony as attempts to protect him from criminal liability.

Based on Wyche's text messages and L.W.'s consistent and corroborated identification of Wyche as the perpetrator, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that Wyche was guilty of malicious wounding, abduction, and two counts of strangulation.

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*