Present:  All the Justices

RALPH ALPHONSO ELLIOTT, JR.

v.  Record No. 081536

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
April 17, 2009

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal arises from the convictions of Ralph Alphonso Elliott, Jr. for violating a protective order issued pursuant to Code § 16.1-279.1.  The issue we consider is the sufficiency of the evidence to support these convictions.

BACKGROUND

The City of Lynchburg Juvenile and Domestic Relations District Court issued a protective order on May 21, 2007 involving Elliott and Pamela Denise Harvey, who are the parents of a minor child.  The order provided that upon "finding the need to protect the health and safety of [Harvey] and family or household members of [Harvey], it is ORDERED that [Elliott] is required to observe reasonable conditions of behavior as set forth below."  The referenced conditions required Elliott to "refrain from committing further acts of family abuse," and "have no further contact of any type with [Harvey] or the named family or household members of [Harvey] except . . . through 3rd party only to arrange visitation."  The order concluded with a provision that it would "remain in full force and effect" until May 8, 2009.

Pursuant to the provisions of Code § 16.1-253.2, which among others establishes the criminal penalties for a violation of a protective order issued under Code § 16.1-279.1, Elliott was tried and convicted in the juvenile and domestic relations district court on August 27, 2007 for violations of the protective order occurring on July 6, 2007 and again on July 17, 2007.  He appealed to the Circuit Court of the City of Lynchburg and was tried in that court without a jury on October 29, 2007.

The evidence presented in the circuit court is provided in this appeal in an agreed statement of facts duly signed by the trial judge.  With regard to the occurrence on July 6, 2007, Harvey testified that Elliott called her on the telephone and wanted to talk to their minor child.  According to Harvey, she informed Elliott that there was a protective order in effect and that he could have no contact.  Elliott testified that he never called Harvey.

With regard to the occurrences on July 17, 2007, Elliott and Harvey appeared at a court proceeding regarding a separate protective order that Elliott had filed against Harvey.  At the conclusion of the hearing, Elliott confronted Donna Harvey, Harvey's mother, outside of the courthouse.  Using crude and vulgar language, Elliott told Harvey's mother that he would "beat [them] to their . . . house."  Elliott then got

in his vehicle and passed them on the road. From Pamela Harvey's residence on Pansy Street, Donna Harvey, Pamela Harvey, and a third witness, Linda Ellis Williams, observed Elliott standing near his parked vehicle on Early Street, one block from the Harvey residence. Though he remained at that distance from the Harvey residence, the view between Elliott and the witnesses was unobstructed. The witnesses observed Elliott speaking on his mobile telephone and making various gestures including pointing at the Harvey residence. Elliott did not telephone Harvey or approach her residence. All three witnesses stated that Elliott did not have any "direct contact" with them.

At the conclusion of the evidence, Elliott contended that the evidence was insufficient to convict him of violating the protective order on July 6, 2007 because of the conflicting testimony given by the parties. Elliott also contended that the evidence was insufficient to convict him of violating the protective order on July 17, 2007 because he made no direct contact with Pamela Harvey on that date and the visual contact was not a violation of the protective order. The circuit court convicted Elliott of both violations and sentenced him to 90 days incarceration on the first violation and 180 days incarceration on the second violation, with the sentences to run consecutively.

3

Thereafter, Elliott appealed his convictions to the Court of Appeals of Virginia. In an unpublished order, the court denied his petition for appeal, holding that the evidence was sufficient to support Elliott's convictions. With regard to the July 6, 2007 violation of the protective order, the court reasoned that Harvey's testimony was accepted by the circuit court, was competent, not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Elliott violated the order. With regard to the July 17, 2007 violation, the court reasoned that "no contact" encompasses visual contact and thus, under the circumstances of the case, Elliott had violated this term of the protective order. We awarded Elliott this appeal.

DISCUSSION

Code § 16.1-279.1 authorizes a juvenile and domestic relations district court to issue a protective order "[i]n cases of family abuse . . . to protect the health and safety of the petitioner and family or household members of the petitioner." In order to accomplish such protection, Code § 16.1-279.1(A) permits the court to impose one, several, or all of a list of enumerated conditions upon the respondent. The first two provisions listed under Code § 16.1-279.1(A) specifically authorize a court to impose conditions on the respondent "[p]rohibiting acts of family abuse," and

4

"[p]rohibiting such contacts by the respondent with the petitioner or family or household members of the petitioner as the court deems necessary for the health or safety of such persons."  The two conditions in the May 21, 2007 protective order prohibited Elliott from both "commiting further acts of family abuse" and having "further contact of any type" with Harvey.  It is the second condition that is at issue in this appeal.

The applicable principles of appellate review are well-established.  On appeal, the facts are viewed in the light most favorable to the Commonwealth, the prevailing party at trial.  Porter v. Commonwealth, 276 Va. 203, 215-16, 661 S.E.2d 415, 419 (2008); Juniper v. Commonwealth, 271 Va. 362, 376, 626 S.E.2d 383, 393 (2006).  This Court will reverse a judgment of the circuit court that is plainly wrong or without evidence to support it.  Jay v. Commonwealth, 275 Va. 510, 524, 659 S.E.2d 311, 319 (2008); Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005).

On appeal, as he did in the circuit court, Elliott contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt of violating the conditions of the protective order on either July 6, 2007 or July 17, 2007. The Commonwealth asserts that both violations occurred when Elliott failed to adhere to the condition that he have "no

further contact of any type" with Harvey as provided in the protective order. According to the Commonwealth, Elliott made "contact" with Harvey during the July 6, 2007 telephone conversation and when Elliott was viewed by Harvey while he stood a block away from Harvey's residence and made several gestures toward the residence on July 17, 2007.

Elliott denies contacting Harvey by telephone on July 6, 2007 and so testified in his defense. He notes that no telephone records were admitted at his trial. Elliott maintains that the only evidence to establish a violation of the protective order was Harvey's uncorroborated testimony, which he contends lacked credibility and ultimately was insufficient to convict him of violating the protective order on July 6, 2007. We disagree.

The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented. Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985); Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982). We give deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony. See Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991). In this case, the circuit court was called upon to

weigh Harvey's testimony against Elliott's testimony and to make a credibility determination. The circuit court accepted Harvey's testimony as competent, not inherently incredible, and sufficient to prove beyond a reasonable doubt that Elliott violated the protective order on July 6, 2007. This judgment of the circuit court is not plainly wrong or without evidence to support it and, accordingly, we hold that the Court of Appeals did not err in sustaining that judgment.

Regarding the conviction resulting from Elliott's presence near the Harvey residence on July 17, 2007, Elliott asserts that while he may have been visible to Harvey, his conduct did not result in "contact of any type" as proscribed in the protective order. We agree.

As we have noted above, the May 21, 2007 protective order imposed restrictive conditions upon Elliott after "finding the need to protect the health and safety of [Harvey] and family or household members of [Harvey]." This is identical language adopted from Code § 16.1-279.1, which begins with the statement, "[i]n cases of family abuse, the court may issue a protective order to protect the health and safety of the petitioner and family or household members of the petitioner." In reviewing the language of Code § 16.1-279.1, we adhere to the familiar principle that under basic rules of statutory construction, we determine the General Assembly's intent from

7

the words contained in the statute.  Alger v. Commonwealth, 267 Va. 255, 259, 590 S.E.2d 563, 565 (2004).  When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.  Id.  Therefore, given the unambiguous wording of Code § 16.1-279.1, the General Assembly clearly intended protective orders to safeguard the health and physical safety of a petitioner.

As relevant to this appeal, Code § 16.1-279.1(A)(2) permits the court to issue a protective order that prohibits "such contacts by the respondent with the petitioner . . . as the court deems necessary for the health or safety" of the petitioner.  While "contacts" is not defined in the statute, in essence, the statute permits the court to fashion protective orders that create a persistent barrier between the petitioner and the respondent so as to reasonably ensure the health and physical safety of the petitioner.

In the present case, the protective order prohibited "contact of any type" which obviously would encompass a broad scope of actions and conduct, both intentional and unintentional, if construed and applied literally.  We are of opinion, however, that "such contacts" contemplated by the statute to be included as a condition in a protective order

8

are intentional acts.  In other words, contacts are those acts by the respondent that intentionally pierce the protective barrier between the petitioner and the respondent fashioned by the protective order.  The resolution of this appeal does not require this Court to specify the bounds of "contacts" as proscribed by Code § 16.1-279.1, and we decline to do so. Plainly, the statute does not authorize a court to fashion a protective order beyond the statute's intended sweep.  In that context, we are further of opinion that the statute permits a protective order that prohibits the respondent from entering a reasonable distance-defined space around the petitioner and, thus, intentionally making visual contact with the petitioner.

Elliott's actions on July 17, 2007 do not constitute contacts contemplated by Code § 16.1-279.1 and authorized to be included in the court's May 21, 2007 protective order. While he may have intentionally placed himself where he was openly visible to Harvey from her residence, it is undisputed that at that place he was located a block away from Harvey's residence, on a different street, and posed no threat of harm to the health and safety of Harvey.  Accordingly, the evidence does not establish beyond a reasonable doubt that Elliott intentionally violated the condition of the protective order because the evidence is insufficient to establish that Elliott intended to visually communicate with Harvey, who was located

9

at her residence one block away.  Accordingly, we hold that the Court of Appeals erred in finding that the evidence was sufficient to support Elliott's conviction for violating the protective order on July 17, 2007.

                              CONCLUSION

For these reasons, we will affirm the judgment of the Court of Appeals sustaining Elliott's conviction of violating the conditions of a protective order on July 6, 2007.  We will reverse the judgment of the Court of Appeals sustaining Elliott's conviction of violating the conditions of a protective order on July 17, 2007, and dismiss the warrant issued against Elliott on that charge.

<u>Affirmed in part, reversed in part, and final judgment</u>.

JUSTICE LEMONS, with whom JUSTICE KINSER and JUSTICE GOODWYN join, concurring in part and dissenting in part.

While I agree with the majority opinion that the conviction for the July 6, 2007 incident should be affirmed, I disagree with the majority determination that Elliott did not violate the terms of the protective order with regard to the July 17, 2007 incident.

The majority holds that because Harvey was "a block away from Harvey's residence, on a different street," he "posed no threat of harm to the health and safety of Harvey."  If this

10

reasoning is sound, then Elliott posed even less threat of harm to the health and safety of Harvey when he was on the telephone with her during the July 6, 2007 incident.

The majority apparently agrees that the July 17, 2007 incident constitutes a contact and that it was intentional but rests its decision upon the conclusion that "the evidence is insufficient to establish that Elliott intended to visually communicate with Harvey."  This conclusion comes in the sentence immediately following the declaration that Elliott "may have intentionally placed himself where he was openly visible to Harvey from her residence."  As the majority notes, this encounter began outside the courthouse after a hearing on a separate protective order that Elliott had filed against Harvey.  As the majority notes,  "At the conclusion of the hearing, Elliott confronted Donna Harvey, Harvey's mother, outside of the courthouse.  Using crude and vulgar language, Elliott told Harvey's mother that he would 'beat [them] to their . . . house.' "  Elliott did "beat them to their house" and positioned himself, as the majority opinion acknowledges, "intentionally  . . . where he was openly visible to Harvey from her residence."  Harvey did see him.  As the Commonwealth summarized in its brief,

> By arriving before [Harvey] and positioning
> himself with a clear view of her home, one
> block distant, Elliott showed that his intent

11

> was to see Ms. Harvey and be seen by her as he
> pointed and gestured.  Taken in context, the
> trier of fact could reasonably view Elliott's
> conduct as a direct method of communicating to
> the victim that he was at hand, and that she
> was not safe from him.

Indeed, such contact was more threatening than the phone call which the majority finds sufficient to sustain the conviction for the July 6, 2007 incident. The trial court was not plainly wrong or without evidence to support the conviction.

I would affirm the judgment of the Court of Appeals in its entirety.  Accordingly, I dissent.