COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Chaney, Callins and Senior Judge Petty
Argued at Lexington, Virginia


JAMES WILLIAM SHOUGH, SR.

                                                   MEMORANDUM OPINION* BY
v.       Record No. 1073-21-3               JUDGE VERNIDA R. CHANEY
                                                   SEPTEMBER 6, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

(Elmer Woodard, on brief), for appellant.  Appellant submitting on
brief.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial in the Circuit Court of Pittsylvania County, James William Shough,
Sr. ("Shough") was convicted of two counts of rape, four counts of forcible sodomy, two counts
of incest, and maliciously discharging a firearm within an occupied dwelling.  On appeal,
Shough contends that the evidence was insufficient to sustain his convictions because the
Commonwealth's evidence was inherently incredible.  For the following reasons, this Court
affirms the trial court's judgment.

I. BACKGROUND

In April 2017, Shough sexually abused his fifteen-year-old daughter, M.C.,[1] who resided
with him.  Initially, Shough rubbed M.C.'s legs, moved his hands up her inner thigh, and grabbed
her breasts. The abuse eventually progressed to vaginal, oral, and anal intercourse.  M.C.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We have abbreviated the victim's name in an effort to provide her a degree of privacy.

testified that she did not tell her friends, teachers, or counselors at school about the sexual abuse because Shough told her that he had "spies" at her school. M.C. also explained that she did not tell the Department of Social Services employees about the abuse when they visited her home because Shough sat beside her during the interview.

Shough's physical abuse of M.C. increased in August 2018 when he punched, kicked, and pointed a gun at M.C. Whenever M.C. tried to fight back, Shough "just hit [her] harder." M.C. testified that she did not reveal the abuse to anyone because of Shough's violence against her. In addition to M.C.'s fear of physical violence from Shough, he exerted psychological pressure over her: Shough told M.C. that he was her "last resort" and no one wanted her. She feared that if she reported Shough, she would be sent to foster care as her siblings had been. Shough also told M.C. that she had committed incest, so she would go to jail if she reported him.

M.C.'s three younger siblings, A.S., C.S., and J.S.,[2] started living with Shough after he obtained custody of them in October 2018. Since M.C. feared for her siblings' well-being, she expressed concern to a gas station employee before they moved into Shough's home and confided in the employee "partially about the sexual abuse." The employee offered to take M.C. to the sheriff's office, but M.C. refused because she feared Shough's physical abuse. When M.C.'s siblings lived with Shough, he installed a deadbolt lock on his bedroom door, where the sexual abuse against M.C. continued to occur. When Shough locked M.C. in his bedroom during the abuse, the other children had no access to the home's only bathroom, so they were forced to relieve themselves outside.

M.C. testified that while Shough did not sexually abuse her in front of the younger children, he did physically beat her in front of them. Once, when M.C. and Shough argued about

---

[2] We have abbreviated the victim's siblings' names in an effort to provide them a degree of privacy.

J.S., Shough fired a gun inside the house. Despite Shough's violence, M.C. did not tell her younger siblings about the sexual abuse. She feared that if she did not comply with Shough's demands, he would sexually abuse her siblings.

The police became involved after M.C.'s co-worker at El Rio notified them that M.C. asked for help to cover up her injuries with make-up. When the police arrived at Shough's home, M.C. explained that her injuries were caused by her tripping over a pig in the pig lot—a story that Shough demanded M.C. and her siblings tell the police. The police did not believe M.C.'s story and went to El Rio the following day to investigate further. When M.C. showed up at work, the police questioned her again on how she got her injuries. She admitted that Shough physically abused her but did not disclose information on the sexual abuse. M.C. reported the sexual abuse in November 2020.

M.C.'s three siblings testified at trial. A.S. testified that she saw Shough beat M.C. as if she "was a grown man," including punching her and pulling her hair. Shough also hit A.S. and the other children, but M.C. was beaten more than the others. C.S. testified that Shough punched and kicked M.C., and held a gun to her head, and that she was never successful in fighting back against him. C.S. explained that she did not report the physical abuse to the counselors who came to the house because she feared Shough, as he had previously choked her. J.S. testified that he saw Shough on four or five occasions pulling M.C. toward the back bedroom against her will, and he suspected sexual abuse. When Shough and M.C. were in the bedroom together, J.S. heard M.C. moaning and Shough yelling. All three siblings witnessed M.C. and Shough sleeping together on the living room couch in "kind of like a cuddling position."

## II. ANALYSIS

### A. Standard of Review

On appellate review of a criminal conviction, this Court "consider[s] the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." *Pooler v. Commonwealth*, 71 Va. App. 214, 218 (2019) (alteration in original) (quoting *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (*en banc*)). We "discard the evidence of the accused *in conflict* with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (emphasis added) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. Sufficiency of the Evidence

Shough alleges that the jury improperly convicted him because M.C.'s testimony "is replete with contradictions and inconsistencies," and therefore, inherently incredible. We disagree. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009)). This Court defers to a trial court's credibility determinations unless the evidence is inherently incredible. *See id.* at 486-87. Evidence is "inherently incredible" if it is "so manifestly false that reasonable men ought not to believe it" or it is "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Id.* at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

This Court holds that the testimony of M.C. and her siblings is not inherently incredible. Although M.C. initially lied to the police about the cause of her injuries and delayed reporting the abuse to law enforcement, a reasonable fact-finder could find that Shough's physical abuse and constant threats of negative consequences understandably deterred her from reporting for a long time. Shough began sexually abusing fifteen-year-old M.C. when she lived with him in April 2017. The abuse occurred consistently and steadily progressed from sexual battery to vaginal intercourse to varying acts of sodomy. Any attempt to resist or fight back was met with even more severe physical abuse from Shough. Shough threatened M.C. not to report him because he had "spies" at her school and claimed that if she did so, she would be sent to foster care or end up in jail for committing incest.

Shough asserts that M.C.'s testimony about the two and one-half years of sexual abuse was uncorroborated by another witness. Nonetheless, "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v.*

*Commonwealth*, 46 Va. App. 73, 87 (2005). "[B]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Id.* at 88 (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 192 (1989)).

Moreover, M.C.'s testimony was corroborated, in part, by her three younger siblings. The siblings were also subjected to physical abuse from Shough, but he beat M.C. more than the others. They noticed that Shough took M.C. alone to his bedroom and locked the door, leaving the other children with no access to the bathroom. Even though M.C. had her own bedroom, Shough forced her to sleep with him on the couch in a cuddling position. M.C. further explained that her continued compliance with Shough's sexual demands was out of her sense of obligation to protect her siblings and prevent them from being sexually abused by Shough. The police were notified of the physical abuse after an individual at El Rio alerted them. Initially, M.C. and her siblings explained her condition using the lie Shough demanded them to tell the police or else they would be beaten. However, M.C. ultimately revealed to the police that Shough physically abused her.

Upon these facts and circumstances, a reasonable fact-finder could find that M.C.'s testimony was credible, notwithstanding M.C.'s prior untruthful reports. Therefore, the evidence is not inherently incredible and is sufficient to support Shough's convictions.

### III. CONCLUSION

The evidence supports the jury's finding that Shough was guilty of the charged offenses beyond a reasonable doubt. Accordingly, this Court affirms Shough's convictions.

*Affirmed.*