COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Friedman and Raphael


AARON MICHAEL EASTER

v.      Record No. 1808-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
MARCH 19, 2024


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

(Sante John Piracci P.C., on brief), for appellant. Appellant
submitting on brief.

(Jason S. Miyares, Attorney General; Elizabeth Kiernan Fitzgerald,
Assistant Attorney General, on brief), for appellee.


A jury convicted Aaron Michael Easter of unlawful wounding. The trial court sentenced

him to five years' incarceration with three years suspended, for an active period of two years'

incarceration. On appeal, Easter argues that the trial court erred in denying his motion to strike.

After examining the briefs and the record, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule

5A:27(a). For the following reasons, we affirm the trial court's judgment.

BACKGROUND[1]

On August 17, 2021, Ronald Spence confronted Aaron Easter, and his girlfriend Melody,

about Easter's alleged trespassing on Spence's property. The two men were neighbors, and Spence

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the
prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)
(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

had asked Easter not to come onto his property while he was absent. Easter "went crazy," and protested the allegations, becoming physically aggressive and argumentative. He accused Spence of fabricating the allegations and began "calling [him] over." Spence approached Easter's porch with his phone, planning to show the footage supporting his allegation. He approached the porch to speak with Melody's daughter, believing she was more level-headed, but Easter continued to call out and argue his objections. Spence then approached the fence separating the properties, and Easter advanced on him quickly.

Spence informed Easter that he was trying to "keep the peace." Easter replied, "fuck the peace," and punched Spence twice in the face. Easter's first punch grazed Spence, but he did not see the second punch coming. Spence heard "a crack" and saw "daylights." He felt as if his "head exploded," and he could feel liquid running down his stomach to his legs. Just after the strike, he heard someone say, "you broke his nose, you fucking idiot." Spence retreated into his home and called the police.

Spence rejected emergency services, believing he had a simple bloody nose. His injuries, however, were more extensive. The strike broke a bone in his nose, causing pressure on his sinus cavity that required surgery to relieve. At trial, Spence testified that almost a year after the strike, he still suffered sudden nosebleeds and a partial loss of smell. Easter was charged with aggravated malicious wounding.

At the close of the Commonwealth's case, Easter moved to strike the evidence, arguing that it did not establish specific intent or malice.[2] The trial court denied the motion.

Easter testified in his own defense, claiming that Spence was untruthful about the circumstances of the fight. According to Easter, Spence approached him suddenly and started arguing about the alleged trespassing. He claimed he had never spoken with Spence before and

---

[2] Easter conceded that a "wounding" had occurred.

denied ever entering the property. Easter conceded that Spence's allegations angered him, but claimed that he only struck Spence because he started taunting him, saying "fight me . . . fight me . . . hit me. Step up and hit me big boy." According to Easter, something "came over [him]," although he "didn't really want to do anything like that to him." He stated that his first strike, with his primary hand, missed when Spence moved his head back, but agreed that his second swing struck Spence in the face. Easter denied having any specialized training or fighting experience. Easter also said the two had never had trouble before.

After the close of evidence, Easter renewed his motion to strike on the same grounds. The trial court denied the motion. The jury convicted Easter of the lesser-included offense of unlawful wounding. The trial court then sentenced him to five years' incarceration with three years suspended. Easter appeals.

ANALYSIS

In ruling on a defendant's motion to strike the Commonwealth's evidence, a trial court must view that evidence in the light most favorable to the Commonwealth. *Hawkins v. Commonwealth*, 64 Va. App. 650, 654 (2015). A motion to strike tests the legal sufficiency of the evidence. *See* Rule 3A:15. "In the context of a jury trial, a trial court does 'not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a *prima facie* case for consideration by the fact finder." *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (quoting *Hawkins*, 64 Va. App. at 657).

When reviewing the sufficiency of the evidence, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020). "In such cases, [t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* Instead, we ask only "whether *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Id.* (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Id.* (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "The credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented." *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009).

"If any person maliciously . . . wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall be guilty of a Class 3 felony."[3] Code § 18.2-51. To be guilty of malicious wounding, a person must intend to permanently, not merely temporarily, harm another person. *Perkins*, 295 Va. at 330.

"[W]hether the required intent exists is generally a question of fact for the trier of fact." *Smith v. Commonwealth*, 72 Va. App. 523, 536 (2020) (quoting *Brown v. Commonwealth*, 68 Va. App. 746, 787 (2018)). "Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Perkins*, 295 Va. at 330. The fact-finder may infer that "every person intends the natural, probable consequences of his . . . actions." *Id.* To determine whether the evidence was sufficient to prove intent, a court should consider both "the method by which a victim is wounded" and "the circumstances under which that injury was inflicted." *Id.* (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 260 (2013)). Under our standard of review, a "factfinder may 'draw reasonable inferences from basic facts to ultimate

---

[3] Easter's assignment of error challenges the ruling of the trial court that the evidence was sufficient for a prima facie showing of malicious wounding. The distinction between malicious wounding and unlawful wounding lies in the presence, or absence, of malice. The specific intent required for each offense is identical. Code § 18.2-51.

facts'" and those inferences cannot be upended on appeal unless we deem them "so attenuated that they 'push "into the realm of the *non sequitur*.""" *Id.* at 332 (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 (2015)).

"Under ordinary circumstances an intent to maim may not be presumed from a blow with a bare fist. But an assault with a bare fist may be attended with such circumstances of violence and brutality that an intent to kill may be presumed." *Fletcher v. Commonwealth*, 209 Va. 636, 640 (1969). Circumstances that may evoke an intent to maim, disfigure, disable, or kill include: an unprovoked attack, the force employed, the number of blows struck, the relative size and strength of the victim and perpetrator, and the defendant's actions and statements after the incident. *See Burkeen*, 286 Va. at 260-61; *Johnson v. Commonwealth*, 53 Va. App. 79, 103 (2008); *Fletcher*, 209 Va. at 641; *Shackelford v. Commonwealth*, 183 Va. 423, 426 (1945).

Easter argues that no evidence existed to elevate his actions from an "offensive touching" to a felonious wounding, because his two punches did not display the "violence and brutality" that raises the specter of specific intent. He relies on the fact that he used no weapon, that he did not strike Spence from behind, and that he had no specialized training, to argue that his punches dwell necessarily within the "ordinary circumstances" contemplated by *Fletcher*. We disagree.

Viewed in the light most favorable to the Commonwealth, the evidence supports the trial court's finding that the Commonwealth presented a prima facie case for malicious wounding. Easter does not deny that his unarmed strike caused Spence's injuries, nor does he deny that he acted out of anger over Spence's allegations.

We note that Spence, in his late 50s when struck, was almost 25 years older than Easter, and while Easter lacked any special training or experience, he struck Spence twice in quick succession before the older man could react—causing great damage with his blows. While we agree that Easter's strikes came while facing Spence, the record reflects that the assault was far from an

impulsive act. In fact, the video evidence shows Easter angrily advanced towards Spence more than once as Melody attempted to restrain him. That behavior demonstrated Easter's intentions, as did his response to Spence's comment that he was trying to "keep the peace." It is also notable that Easter took no actions tending to show immediate remorse or concern for Spence. *See Roark v. Commonwealth*, 182 Va. 244, 246 (1944) (finding the actions by Roark, in rushing the victim to the hospital and offering to pay for all treatment, clearly negated the required intent).

Easter's intentions were properly an issue of fact to be evaluated on their merits by the jury. *See Burkeen*, 286 Va. at 261 (finding intent could be inferred from a single blow to the face because the strike came without provocation and against a defenseless victim not expecting such a blow). Here, the trial court properly concluded that the Commonwealth had presented sufficient evidence, if believed by the jury, to prove that Easter acted with the specific intent required for malicious wounding.[4]

## CONCLUSION

For the foregoing reasons we hold that the trial court did not err in denying Easter's motion to strike. Accordingly, we affirm the trial court's ruling.

*Affirmed.*

---

[4] We note that in finding Easter guilty of unlawful wounding, the jury necessarily found that he did not act with malice. Thus, the record reflects that the jury carefully evaluated all the evidence.