UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Raphael

BLAKE AUSTIN CARPENTER

v.     Record No. 0307-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MARCH 26, 2024

FROM THE CIRCUIT COURT OF HENRY COUNTY
Marcus A. Brinks, Judge

(Michael A. Nicholas; Daniel, Medley & Kirby, P.C., on brief), for
appellant.  Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Robert D. Bauer, Assistant
Attorney General, on brief), for appellee.


A jury convicted Blake Austin Carpenter of forcible sodomy and object sexual penetration

of the labia majora.[1]  On appeal, Carpenter challenges the denial of his motion to strike the charges

on the grounds that the victim's testimony was inherently incredible.  After examining the briefs

and record in this case, the panel unanimously holds that oral argument is unnecessary because "the

dispositive issue or issues have been authoritatively decided, and the appellant has not argued that

the case law should be overturned, extended, modified, or reversed."  Code § 17.1-403(ii)(b); Rule

5A:27(b).

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Gerald v.*

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The jury acquitted Carpenter of another charge of object sexual penetration of the anus.

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

As established by her testimony at trial, S.E., a pizza delivery driver, drove to Carpenter's residence on February 20, 2021, around 10:30 p.m. to deliver a pizza.[2] Upon arriving at Carpenter's residence, S.E. noticed that "the house looked dark" and she "couldn't tell if anyone was home," so she called the phone number on the order receipt to verify Carpenter's address. Carpenter answered the phone, told S.E. that he was at a nearby house, and asked her to pick him up. S.E. testified that she agreed to pick up Carpenter at the nearby house because "it was cold outside and I felt bad about that and I didn't want the customer to have to walk all the way back up to the first house." Carpenter got in the front passenger seat of S.E.'s vehicle, and S.E. began driving him back to his residence. S.E. recounted that during the drive, Carpenter told her that "he could give me more than I make in a paycheck in just a few minutes if I was to go back in that first house with him." S.E. reiterated that Carpenter "was telling me that he could give me a couple hundred dollars to go inside for a couple minutes and that we could have a good time." S.E. refused Carpenter's offer to pay her for sex, telling him, "That I wasn't interested and I had to get back to work because I was supposed to be getting off soon to go home to my son."

S.E. testified that when they arrived at Carpenter's residence and parked, Carpenter "moved the delivery bag to the back seat, out of the way, and he undid my pants and pulled his down as well and pulled my head over to make me perform oral sex on him." S.E. then stated,

---

[2] We use initials, instead of the victim's actual name, in an attempt to better protect her privacy.

"And then he proceeded, after I told him that I was on my period and I wasn't interested and to please stop, he stuck his finger inside my vagina and then stuck it in my anus, and I asked him not to." S.E. described that Carpenter pulled her black leggings and underwear past her knees before undoing the belt buckle and zipper on his blue jeans. S.E. then detailed that as Carpenter "pulled out his penis and pulled his underwear down," he "just kept talking about how he had money and showed me a black wallet full of cash and telling me just to go inside for a couple minutes." S.E. testified that Carpenter then "grabbed the back of my neck and lowered my head down into his waist area and put his penis in my mouth and kept pushing my head down until I finally was able to get away."

S.E. recollected that she was forced to perform fellatio on Carpenter for "one to two minutes" before a pickup truck with its headlights on pulled up nearby, prompting Carpenter to exit S.E.'s vehicle with the pizza. S.E. then drove away and returned to the pizza restaurant, where she immediately reported the sexual abuse to her manager. S.E.'s manager testified that S.E. "was hysterical. She was like crying and she was — she seemed very panicky." S.E.'s manager further testified that S.E. told her that "the person she delivered to tried to rape her" and that "the person got into her car and then forced himself in her mouth." S.E. then called 911 and told the 911 dispatcher that Carpenter had forced her to "suck his penis" and had used his fingers to penetrate her. During the 911 call, the dispatcher asked S.E. to specify whether Carpenter had used his fingers to penetrate her vagina or her anus, and S.E. replied, "[M]y vagina." The 911 dispatcher then instructed S.E. to go to the Henry County Sheriff's Office to speak with an investigator. Soon thereafter, S.E. reported to Investigator David Ayers that she had been sexually assaulted. During her interview with Investigator Ayers, S.E. received a phone call and text message from Carpenter asking her to verify her cell phone number. Investigator Ayers testified that he told S.E. to continue the text communication to help police locate the suspect.

S.E. was then examined by Stephanie Hodges, a forensic nurse examiner, at the Carilion Franklin Memorial Hospital in Rocky Mount. Hodges testified that S.E. told her that "she [S.E.] had been sexually assaulted while delivering a pizza." S.E. described to Hodges that:

> she was delivering the pizza and an individual had gotten in the car with her. She had taken that individual to an address and he proceeded to use his left hand to reach behind her and put his hand down the back of her pants. And she felt contact initially on her rectum and then she felt contact inside her vaginal area.

Hodges testified that S.E. "also stated that he had pulled out his penis and he had taken his hand and pulled it behind her head and bent her head over the console to force his penis in her mouth." In addition, S.E. told Hodges that "the assault ended when she told the defendant that she had a tracker on her car and if she was at one spot too long, they would know where she was at. And then another vehicle pulled in and some people started yelling and that's when it stopped." Hodges observed several abrasions on S.E.'s vaginal wall.

The next day, S.E. informed her coworker that "there was an incident with one of her deliveries and that she had been touched and abused and that she had to go to the Sheriff's Office, do the paperwork." S.E. texted her coworker Carpenter's name and address. S.E.'s coworker testified that the pizza restaurant received a pizza delivery order that evening to Carpenter's residence, but the store did not complete the order "because of the incident the day before." A few days later, Investigator Ayers and Henry County Police arrested Carpenter at his residence for forcible sodomy, object sexual penetration of the labia majora, and object sexual penetration of the anus.

At trial, S.E. maintained that she did not initiate any sexual activity with Carpenter, that she did not know Carpenter before the assault, and that she told Carpenter to stop "[a]t least five or six times." S.E. emphasized that although Carpenter did not brandish a weapon or expressly threaten her during the assault, she was scared "[b]ecause I'm maybe a hundred and twenty

- 4 -

pounds soaking wet and it was dark and at the time I didn't see anybody around. And I was scared I couldn't defend myself and I didn't have anything to properly defend myself." Carpenter moved to strike the charges, arguing that "the Commonwealth has not put on a prima facie case that the acts complained were accomplished by force[,] threat[,] or intimidation." Carpenter further argued that S.E.'s testimony was "incredible as a matter of law" because she provided inconsistent accounts that were uncorroborated by physical evidence. The trial court denied Carpenter's motion. Following closing argument, the jury convicted Carpenter of forcible sodomy and object sexual penetration of the labia majora, but it acquitted him of object sexual penetration of the anus. Carpenter now appeals.

## II. ANALYSIS

On appeal, Carpenter argues, "The Circuit Court of Henry County erred when it overruled the motion to strike the indictments on the grounds that the complaining witness' testimony was inherently incredible as a matter of law." Specifically, Carpenter contends that the evidence was insufficient to sustain his convictions because S.E. "never testified that a threat was made against her, that [a] weapon was used against [her], or that he deprived her of any means of egress from the vehicle." Carpenter asserts that "the jury could not have concluded, as a matter of law, that the sodomy or object sexual penetration [w]as committed as a result of force, threat, or intimidation."

The Supreme Court has often stated, "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). In such cases, a reviewing court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Perkins*, 295 Va. at 327 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, this Court must ask "whether *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Gerald*, 295 Va. at 486 (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). However, the Supreme Court has noted, "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (citing *Juniper*, 271 Va. at 415). Consequently, "'[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

S.E.'s testimony simply was not inherently incredible as a matter of law, and Carpenter points to nothing in the record that falsifies S.E.'s testimony. A witness's testimony is not

inherently incredible when it is corroborated by other evidence although corroboration is not necessary. *Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019). Here, substantial evidence corroborated S.E.'s account. First, S.E.'s manager testified that when S.E. returned to the pizza restaurant after completing this delivery, S.E. was very upset and told her manager that the person she had just delivered to "got into her car and then forced himself in her mouth." Second, Investigator Ayers testified that he interviewed S.E. about the sexual abuse and later arrested Carpenter at his residence. Third, S.E.'s coworker testified that S.E. told him that "there was an incident with one of her deliveries and that she had been touched and abused," and S.E. texted him Carpenter's name and address. Fourth, forensic nurse Hodges testified that during the forensic examination, S.E. provided the details of her sexual abuse, and Hodges observed several abrasions on the inner walls of S.E.'s vagina.

In short, the elements for both offenses were clearly established by S.E.'s testimony and the Commonwealth's other evidence. Given that S.E.'s testimony was not inherently incredible as a matter of law and given that the Commonwealth's evidence corroborated S.E.'s testimony, we certainly cannot say that no rational fact finder could have found the evidence sufficient to sustain Carpenter's two convictions beyond a reasonable doubt.

### III. CONCLUSION

For all of the foregoing reasons, we affirm Carpenter's convictions by the trial court.

*Affirmed.*