Present:  All the Justices

COMMONWEALTH OF VIRGINIA

OPINION BY
v.  Record No. 230907                          JUSTICE THOMAS P. MANN
JANUARY 16, 2025

TANYA RASHAE HOLLAND


FROM THE COURT OF APPEALS OF VIRGINIA

Appellate courts are a court of review, not first view.  When evaluating factual or credibility determinations, we do not put ourselves in the shoes of a trial judge and ask, "What would we have done?"  Rather, we are confined to a cold record, with its attendant absence of the evidentiary nuances and subtleties observed only by the trial court.

Still, we are not automatons, and may unsurprisingly feel the tug of our own collective experiences pressing us to put aside the appropriate standard of review to impose a result closer to our own notions of correctness.  This tug can be compelling, even when appellate review requires a court to analyze the evidence in the light most favorable to the prevailing party and to leave a trial court's finding undisturbed absent plain error or a clear abuse of discretion.

And while we may understand and even appreciate the impulse, it should not happen.  And when it does, we are obligated to step in, as we do here.

This case involves a circuit court's rejection of a defendant's motion to withdraw a plea of no contest and the Court of Appeals' reversal of that denial.  In a published opinion, the Court of Appeals applied an incorrect standard of review, improperly shifted the burden of proof away from the movant, and wrongly swapped the trial court's discretion for its own.

INTRODUCTION

Tanya Rashae Holland pleaded no contest to felony child neglect resulting in serious injury. After entering her plea, but before sentencing, Holland was appointed new counsel. Four months later, on the eve of sentencing, Holland moved to withdraw her plea, contending that it had been entered inadvisedly based on misrepresentations made by her former counsel. The trial court denied Holland's motion and sentenced her to five years of incarceration, the entirety of which was suspended on certain terms and conditions.

Holland appealed. She assigned error to the trial court's refusal to permit her plea withdrawal, and the Court of Appeals agreed, holding that the trial court had abused its discretion by denying her motion. We now reverse the Court of Appeals, reinstate the final order of the trial court and enter final judgment.

I. BACKGROUND

On January 11, 2020, Holland gave her three-year-old son, B.M., one milliliter of liquid methadone. B.M. quickly lost consciousness. He was taken to a nearby hospital where he nearly died. Holland contended that she mistook her prescription methadone for Zyrtec allergy medicine.

On July 20, 2020, Holland was indicted on a single count of felony child neglect resulting in serious injury. Holland, who was then represented by Darren S. Haley, elected a trial by jury. Later, however, she entered a no contest plea. On June 24, 2021, at Holland's plea hearing, the Commonwealth proffered, without objection or amendment, the evidence it would have presented at trial.

A. The Commonwealth's Evidentiary Proffer

On January 11, 2020, first responders received a 911 call from Holland's home in

2

Martinsville, Virginia, where she lived with her three-year-old son, B.M.; B.M.'s infant sister; B.M.'s father; and B.M.'s paternal grandparents, James and Devona Moyer. As B.M. was "unconscious and not breathing normally," he was taken to the hospital. B.M.'s blood work showed Methadone in his system. B.M. was then transferred to a children's hospital. He received Narcan continuously because otherwise he became "unresponsive." According to doctors, the methadone could remain in B.M.'s system for "up to 60 hours."

That night, hospital staff notified local law enforcement and social services of the methadone in B.M.'s system. Investigator Misty Pace of the Henry County Sheriff's Office and a social worker from the Department of Social Services arrived at the hospital shortly thereafter. The charge nurse advised Investigator Pace that Holland had "told her version of what happened a couple of different ways."

Investigator Pace brought Holland into a private conference room at the hospital for questioning. Holland told Investigator Pace that when she returned home from work around 10:40 or 10:50 p.m. that night, B.M. was "jumping and playing around." B.M. also had a "running nose and was stuffy." Holland explained that she gave B.M. one milliliter from a "prescription bottle with the label partly removed" and the word "congestion" on it. Shortly afterward, B.M. complained of "itching" and quickly fell asleep. When Devona remarked that he had fallen asleep unusually quickly, Holland replied that he should not have because she gave him "Zyrtec."

Holland further informed Investigator Pace that she suffered from back pain, that she had formerly been "addicted" to pain pills, and that her pain clinic had "prescribed liquid methadone," which she kept "in a lockbox . . . beside the bed." Holland later admitted to the social worker that she had given B.M. "methadone instead of Zyrtec even though she thought it

3

was Zyrtec." Holland also admitted that she did not have the methadone in the lockbox but "near the Zyrtec underneath the sink."

Investigator Pace obtained a warrant to search Holland's home. During the search, she collected "a prescription bottle with the prescription partly torn off," which was ultimately found to contain no controlled substances.

While at the residence, Investigator Pace spoke to B.M.'s paternal grandparents, who had been present for the incident. B.M.'s grandfather James Moyer told the investigator that "a short time" after Holland had given B.M. some medicine, B.M. became "scratchy," began breathing abnormally, and "went out." Additionally, James told Investigator Pace that Holland generally "would stay in her room and sleep all day until it was time to go to work and then come back home and sleep," and that he and B.M.'s grandmother "would watch the children along with [B.M.'s father]."

After learning of B.M.'s methadone exposure, James said that "he would not be surprised if [Holland] gave it to [B.M.] so he would sleep since he was a wide-open child running around." James added that while first responders were in the house, he told Holland that she should give them the medicine bottle, but Holland never did.

B.M.'s grandmother Devona told Investigator Pace that B.M. was sleeping in her bed when she heard "unfamiliar" breathing. When she could not wake B.M., she called for Holland, who screamed that B.M. was not breathing. Devona called 911 and performed CPR until paramedics arrived.

At the conclusion of her investigation at the home, Investigator Pace filed for a protective order against Holland.

4

B.  Circuit Court Proceedings

In July 2020, a grand jury handed down a direct indictment[1] that alleged Holland had violated Code § 18.2-371.1(A).[2]  Holland ultimately requested a guilty plea hearing.

At Holland's June 24, 2021, plea hearing, the trial court conducted the required plea colloquy.  Holland answered to the trial court's satisfaction each question asked, including:

- "Do you fully understand the charge against you today?"

- "Have you had enough time to talk with your lawyer about any possible defense that you might have to the charge?"

- "Did you talk with your lawyer about whether you should plead guilty, not guilty or no contest?"

- "[D]id you decide for yourself that you wanted to plead no contest?"

- "You understand when you plead no contest, you give up your right to a jury trial, you give up your right to remain silent, you give up your right to confront and cross-examine the witnesses and you give up your right to defend yourself on this case?"

- "Has anybody promised you anything if you plead no contest?"

- "Do you understand the maximum penalty for this offense is ten years in prison?"

- "[Y]ou understand the Court is not required to follow [sentencing] guidelines?"

---

[1] In this case, there was no preliminary hearing in the district court.  The Commonwealth proceeded directly to a grand jury.

[2] "Abuse and neglect of children; penalties; abandoned infant." In pertinent part, Code § 18.2-371.1(A) provides:  "Any parent, guardian, or other person responsible for the care of a child under the age of 18 who by willful act or willful omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child is guilty of a Class 4 felony."

5

- "Are you entirely satisfied with the services of your attorney, Mr. Haley?"

- "Have you understood all my questions?"

- "Have you answered all of my questions truthfully?"

- "Do you have any questions you wish to ask me?"

The trial court then asked Holland's attorney, Haley, whether there was anything he or Holland wished to add. Haley replied that there was not. He told the trial court, "[W]e have gone through discovery and [were] aware of what was in the police report and agree to the Court [sic] to read the [Commonwealth's] summary, as it was fairly identical to the police report. We have no additions, amendments, or corrections to that at this point." Of particular note, there was no agreed disposition as to sentencing with the Commonwealth or any understanding that the government would make a sentencing recommendation to the trial court.

The trial court then accepted Holland's no contest plea and found her guilty. Sentencing was set for December 8, 2021.

Five days before sentencing, Haley sent a letter to Holland, the Commonwealth's Attorney, and the trial court, informing all three of the suspension of his law license for 18 months, effective November 19, 2021. In response, the trial court appointed the Office of the Public Defender to represent Holland, and, after multiple continuances, reset sentencing for April 27, 2022.

The day before Holland's sentencing, her new counsel, Daniel P. Gaylon, moved to withdraw Holland's no contest plea under Code § 19.2-296. The motion asserted that Holland had entered her no contest plea based on Haley's representation to her that the Commonwealth "would not subject her to any incarceration time," and that she had not "ha[d] an opportunity to review the discovery evidence or discuss trial strategy." The motion also complained that

6

Holland was unaware of the elements of the charged offense when she entered her plea. Her plea, she contended, although made in good faith, was therefore "improvident and not intelligently made."

The Commonwealth objected. In its opposition, it argued that Holland lacked a good-faith basis for withdrawing her plea and that it would be prejudiced by the withdrawal of the plea. The Commonwealth explained that it had originally subpoenaed 17 witnesses for trial, and if Holland were permitted to withdraw her plea, all 17 witnesses would have to be re-subpoenaed. Three of its key witnesses, however, were no longer employed in their same roles, and two of the three had relocated their residences. The Commonwealth complained it would be prejudiced not only by the substantial witness recall and the added uncertainty of procuring retired or relocated witnesses, but also by the length of the delay. The Commonwealth noted that a bench trial may take several additional months to set and a jury trial, longer still. The prospect of a trial held more than three years since the alleged offense, the Commonwealth argued, was prejudicial to its case. The presiding visiting judge, not wanting to contradict an order of the judge who set the matter for sentencing, ordered a continuance to June 14, 2022.

At the June 14, 2022, hearing with the original trial judge presiding, the trial court noted that it had reviewed Holland's motion and the Commonwealth's written objection. After hearing argument, the trial court denied Holland's motion to withdraw her plea. The trial court did not make express findings on the record, explaining that "[a]fter giving the matter due consideration, the motion to withdraw the guilty plea is denied, and I note [the] objection for the record." The trial court then moved to sentencing. It sentenced Holland to five years' incarceration, all of which was suspended conditioned upon successful completion of two years' probation and five years' good behavior.

7

## C. The Court of Appeals

In a published opinion, a unanimous panel of the Court of Appeals reversed the circuit court's judgment. *See Holland v. Commonwealth*, 79 Va. App. 11 (2023). Immediately setting the tone for its opinion, the Court of Appeals observed: "Consistently maintaining that she gave her child the wrong medication by accident, Tanya Holland entered a no contest plea to felony child neglect resulting in serious injury." *Id.* at 18.

The Court of Appeals noted that a motion to withdraw a guilty plea, made before sentence is imposed, "should not be denied . . . if it appears from the surrounding circumstances that the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or if it was induced by fraud, coercion or undue influence." *Id.* at 23-24 (citation omitted). It distilled the pre-sentence plea-withdrawal standard, based on *Parris v. Commonwealth*, 189 Va. 321 (1949) and its progeny, into a three-factor test. It held that the defendant bears the burden to demonstrate: "(1) that the defendant can present a 'reasonable defense' to the charge, (2) that the plea was entered 'in good faith,' and (3) that the motion to withdraw the plea was not filed 'merely to cause undue delay in the administration of justice or [otherwise represents] bad faith or misconduct." *Id.* at 24 (alterations in original) (citations omitted). Examining the facts of Holland's case, the Court of Appeals found "that Holland [had] met her burden to show that her motion to withdraw should be granted," and that "a reasonable jurist could not conclude that the Commonwealth 'combatted' Holland's showing with any evidence of undue prejudice that would outweigh the equities that favor granting Holland's motion." *Id.* at 27.

First, the Court of Appeals concluded that Holland had successfully made a prima facie showing that she lacked a criminal intent and thus had a reasonable defense to the charge. "[S]ince her first interview with Investigator Pace, Holland has maintained that she accidentally

8

gave her son methadone, thinking it was Zyrtec." *Id.* at 28. If Holland's actions were not "willful," the Court of Appeals reasoned, then Holland could not be guilty of violating Code § 18.2-371.1(A). Whether she "presented a winning defense is a question for a future factfinder." *Id.* As a matter of law, the Court of Appeals concluded that Holland's asserted defense alone was sufficient to meet her burden. *Id.* at 28-29.

Second, the Court of Appeals opined that because "the trial court made no findings," there were no findings of fact that required deference. *Id.* at 29. The Court of Appeals concluded that Holland moved to withdraw her plea in good faith, finding dispositive her proffer that she had been uninformed of the elements of the crime at the time she entered her plea. *Id.* at 32. Relying on *Bottoms v. Commonwealth*, 281 Va. 23 (2011) and *Justus v. Commonwealth*, 274 Va. 143 (2007), the Court of Appeals disregarded statements by Holland and her counsel from the plea colloquy denying the existence of a plea agreement and asserting that Holland had an opportunity to review discovery and concluded that the Commonwealth had failed to "rebut this specific argument with any evidence." *Id.* at 30-31, 33.

Third, the Court of Appeals held that the eleventh-hour nature of Holland's motion to withdraw her plea was not by itself evidence of bad faith. It again noted that the trial court never made a specific finding on that issue. Relying on other cases featuring successful, last-minute plea withdrawals, the Court of Appeals concluded that "on the record before us, any reasonable jurist would have been left to conclude that Holland met her burden to show she did not move to withdraw her plea '*merely* to cause undue delay . . . or [otherwise in] bad faith.'" *Id.* at 36 (quoting *DeLuca v. Commonwealth*, 73 Va. App. 567, 579 (2021), *aff'd per curiam*, 302 Va. 171 (2023)).

9

Finally, the Court of Appeals concluded that the "record lack[ed] evidence of undue prejudice to the Commonwealth that would outweigh the equities that support granting Holland's motion." *Id.* It distinguished *Small v. Commonwealth*, 292 Va. 292 (2016), a case in which this Court held that prejudice to the Commonwealth outweighed the equities favoring plea-withdrawal. The three-year delay between taking the plea and moving to withdraw in *Small* was not, it concluded, the same as the nine months in Holland's case. And because the "trial court did not make any findings concerning the length of delay causing any prejudice to the Commonwealth," neither would the Court of Appeals. *Id.* at 39. The panel then found that the Commonwealth's evidence of prejudice — the 17 witnesses the Commonwealth expected to recall for its case-in-chief, the accessibility of certain key witnesses, and the two years that had passed since the alleged offense — was not enough. *Id.* at 37-38. "The mere inconvenience of proceeding to trial," it reasoned, "cannot alone constitute undue prejudice." *Id.* at 40.

The Court of Appeals reversed the trial court's judgment and remanded the case with instructions that Holland "may withdraw her no contest plea and the case may proceed to trial if the Commonwealth be so advised." *Id.* at 41.

## II. ANALYSIS

### A. Standard of Review

The decision whether to grant or deny the withdrawal of a plea "is a matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case." *Parris,* 189 Va. at 324. The abuse of discretion standard, which will be addressed in greater detail further below, can be pictured this way, when boiled down to its core: Put 10 jurists in the same courtroom on June 14, 2022, hearing the same argument and

10

considering the same legal principles. Considering the facts of this case, some could have

reasonably concluded that withdrawal was proper while others could have reasonably concluded

that withdrawal should be disallowed. This is the crux of the abuse of discretion standard, and

directly stated: no such abuse occurred here. ("Only when reasonable jurists could not differ

can we say an abuse of discretion has occurred." *Minh Duy Du v. Commonwealth*, 292 Va. 555,

564 (2016)).

In applying an abuse of discretion standard in this case, we view the facts "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." *Hill v.

Commonwealth*, 297 Va. 804, 807 (2019) (internal quotations and citation omitted). "We also

presume — even in the absence of specific factual findings — that the trial court resolved all

factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave

that party the benefit of all reasonably debatable inferences from the evidence." *Id.* (citing

*Fitzgerald v. Commonwealth*, 223 Va. 615, 627-28 (1982)).[3]

This latter point bears emphasizing. Where, as here, the trial court does not make express

findings of fact, a reviewing court cannot make its own.[4] Instead, it is an appellate court's

function to presume that the trial court made the requisite findings of fact to support its decision.

---

[3] *See also Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) ("[W]hen faced with
a record of historical facts that supports conflicting inferences, a [reviewing] court . . . must
presume — even if it does not affirmatively appear in the record — that the trier of fact resolved
any such conflicts in favor of the prosecution, and must defer to that resolution." (internal
quotation marks omitted)).

[4] *See Hill*, 297 Va. at 807; *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)
("Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on
appeal with a presumption that the law was correctly applied to the facts."); *see also Bottoms v.
Bottoms*, 249 Va. 410, 414 (1995) ("A reviewing court should never redetermine the facts on
appeal.").

11

And those findings of fact "will not be disturbed unless plainly wrong or without evidence to support [them]." *Jones v. Commonwealth*, 29 Va. App. 503, 512 (1999).

### B. Withdrawal of Guilty Pleas

"Under Virginia law, motions to withdraw a guilty plea[5] are governed by two separate standards," depending on whether the motion comes before or after the defendant's sentencing. *Brown v. Commonwealth*, 297 Va. 295, 299 (2019). Under Code § 19.2-296, a defendant seeking to withdraw his plea after his sentencing must establish a "manifest injustice." That strict standard largely guards against "disappointment in the terms of the sentence." *Id.* (quoting *Lilly v. Commonwealth*, 218 Va. 960, 965 (1978)).

On the other hand, we have established a more relaxed standard for motions to withdraw a plea before a defendant's sentencing. First articulated in *Parris,* 189 Va. 321, "[a] long line of cases" has since "refined the standard." *Brown*, 297 Va. at 299. Our precedent instructs that a defendant's pre-sentencing plea-withdrawal motion should be granted in one of two situations: either when the defendant's guilty plea was "made involuntarily," or it was "entered inadvisedly, if any reasonable ground is offered for going to the jury." *Id.* (quoting *Parris*, 189 Va. at 325).

For pleas "entered inadvisedly," as Holland alleges hers was, a defendant then bears the burden of establishing the following: "(1) the plea of guilty was submitted in good faith under an honest mistake of material fact or facts . . .; (2) the evidence supporting the motion shows that there is a reasonable defense to be presented to the charge; (3) granting the motion will not unduly prejudice the Commonwealth;[6] and (4) the motion to withdraw the plea was not filed

---

[5] Code § 19.2-296 also expressly governs withdrawals of no contest pleas. The two are interchangeable for purposes of this Opinion.

[6] The Court of Appeals discounted as dicta *DeLuca*'s recitation of the plea-withdrawal test regarding burden of proof for prejudice. *Holland*, 79 Va. App. at 26 n.2. This was error. A

merely to cause undue delay in the administration of justice or [otherwise represents] bad faith or misconduct by or on behalf of the defendant." *DeLuca,* 73 Va. App. at 579 (internal quotation marks and citations omitted). The defendant's assertions must be "sustained by proofs." *Justus,* 274 Va. at 153-54 (quoting *Parris*, 189 Va. at 325-26).

As explained below, based on the appropriate standard of review, we conclude — as we must — that the record supports the trial court's denial of Holland's motion to withdraw her plea based on the first element alone. To us, that ruling was not facially unreasonable, as that term is understood in this context. That said, we need not address the other three. *See McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010) ("[F]aithful adherence to the doctrine of judicial restraint warrants decision of cases 'on the best and narrowest ground available.'" (quoting *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 531 (1991))).

C. Element One – Plea Entered in Good Faith Under Honest Mistake of Fact

Unless plainly wrong or without evidence to support it, a trial court's finding on the issue of good faith is a finding of fact to which appellate courts defer. *See DeLuca*, 73 Va. App. at

---

statement or opinion of a court is dicta when it relates to an issue the court was not asked to decide. *See Commonwealth v. Williams*, 295 Va. 90, 98 (2018) (citing *Manu v. GEICO Cas. Co.*, 293 Va. 371, 382 (2017)). Although the Court decided *DeLuca* on the "best and narrowest" grounds and therefore did not reach the prejudice prong of the plea-withdrawal test, all elements of the test were properly before it. "*Stare decisis*" applies not merely to the literal holding of the case, but also to its *ratio decidendi* — the essential rationale in the case that determines the judgment.'" *Womack v. Commonwealth*, 82 Va. App. 289, 303 (2024) (quoting *Prophet v. Bullock Corp.*, 59 Va. App. 313, 319 (2011)). "In other words, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Id.* (internal quotation marks omitted). Before the *DeLuca* Court could undertake an analysis of any one element, it was required to propound the rules for all elements of the plea-withdrawal test. Thus, this statement of the law was part of the *ratio decidendi* and binding upon the Court of Appeals here. Assuredly, it was not dicta.

580; *Branch v. Commonwealth*, 60 Va. App. 540, 547-48 (2012). In this appeal, the Court of Appeals did not accord the required deference to the trial court's finding on this issue.

At her plea-withdrawal hearing, Holland's new counsel proffered three bases to support Holland's assertion that she mistakenly entered her plea: (1) Holland's prior counsel had failed to inform her that 'willfulness' was an element of the charged crime, and so she had a viable defense of lack of intent; (2) Haley had neglected to review discovery with Holland; and (3) Haley had incorrectly led Holland to believe that she was entering a plea agreement with the Commonwealth and would therefore serve no active jail time.

The Court of Appeals examined only the first proffered basis. It found that the Commonwealth had failed to "rebut" Holland's proffer, and therefore no "factual ambiguities or inconsistencies" existed that would otherwise require resolution "in the Commonwealth's favor." 79 Va. App. at 32-33. By reaching this conclusion, the Court of Appeals necessarily discounted all of Holland's statements from her plea colloquy. *Id.* at 30 n.4.

In its analysis of element one, the Court of Appeals erred in at least three ways:

First, the Court of Appeals erred by disregarding *all* statements made during Holland's plea colloquy. The Court of Appeals cited *Bottoms*, 281 Va. 23 and *Pritchett v. Commonwealth*, 61 Va. App. 777 (2013) for the proposition that a trial court must not consider a defendant's "admission about external facts such as guilt or available defenses." *Holland*, 79 Va. App. at 30 n.4. In *Bottoms*, we explained that

> reliance upon admissions made by a defendant in a guilty plea and the attendant colloquy . . . is misplaced in the context of a Code § 19.2-296 motion to withdraw a guilty plea prior to sentencing. This is so because when the case remains within the jurisdiction of the trial court to permit the withdrawal of a guilty plea, the presumptions that would favor the Commonwealth in a habeas proceeding, where the plea is presumed to be valid and is not to be lightly set aside, simply do not apply. Moreover, when a defendant files a motion under Code § 19.2-296, he is

14

necessarily seeking to repudiate the admission of guilt and some, if not all, of the admissions made in the guilty plea colloquy.

281 Va. at 33 (internal quotation marks and citations omitted) (quoting *Justus,* 274 Va. at 154). The Court of Appeals over-relied on *Bottoms.* Our holding in *Bottoms* did not impose a blanket prohibition against considering all plea colloquy statements when reviewing a plea-withdrawal motion. Rather, it was a practical admonition, rooted in the idea that it makes little sense to bind a defendant to an admission when the basis of his or her subsequent plea-withdrawal motion is a repudiation of that admission.

Also, *Pritchett* was more nuanced than the Court of Appeals credited. There, the Court of Appeals explained that a trial court cannot consider "statements admitting to certain external facts of which the trial court has no direct personal knowledge," specifically those "that concern the defendant's guilt of the charged offense, the absence of a defense, or the defendant's satisfaction with the services of a lawyer." 61 Va. App. at 791. On the other hand, the *Pritchett* Court concluded that other plea-colloquy statements were not only permissible, *but necessary*, for a court to consider, lest the plea colloquy itself become "meaningless," and defendants could be incentivized to engage in "the worst sort of gamesmanship." *Id.* at 792.

For example, a defendant's acknowledgment "that the trial court is not bound by the prosecutor's [sentence] recommendation" can be considered because the trial court itself provided that information, and "the defendant is not making an admission about external facts such as guilt or available defenses." *Id.* Similarly, if a trial court advised a defendant of the elements of the offense during a plea colloquy, it would make little sense to allow that defendant to later claim ignorance of the same elements. *See id.*

Although *Pritchett* concerned admissions made during a defendant's plea agreement colloquy under Rule 3A:8(c)(2), its reasoning is applicable to guilty pleas as well. In Holland's

15

case, there were at least three statements in the colloquy that the trial court could have properly relied upon to find that the plea of no contest was not submitted under an honest mistake of material fact or facts:  (1) Haley's statement to the trial court that "we have gone through discovery;" (2) Holland's acknowledgment that she had been promised nothing in return for her plea; and (3) the trial court's explanation about the maximum possible sentence and the nonbinding nature of the sentencing guidelines.

The first statement — which contradicted Holland's later proffer — was permissible because it concerned neither Holland's guilt, her available defenses, nor her satisfaction with her attorney.  *See id.* at 791.  In other words, it was not a subjective statement, nor one commonly susceptible to repudiation in the plea-withdrawal context.  The second and third statements cut against Holland's assertion that she believed she had a plea agreement[7] with the Commonwealth and faced no active jail time.  Those statements reflected information about which the trial court had personal knowledge; the trial court having provided that information to Holland itself.  *See id.* at 792.

From these three statements, the trial court could have reasonably concluded that Holland did in fact review discovery with Haley,[8] knew she had no plea agreement with the

[7] THE COURT:              Has anybody promised you anything if you plead no
                            contest?
   THE DEFENDANT:          No.

We note that this is neither an admission nor a subjective statement.  Here, it was an assertion of fact which was appropriate for the trial court's consideration in a plea withdrawal motion.  This will not always be so; the context of the statement is an important consideration.  In this case, a line can be drawn from this question to the exchange where the trial court explained it was not bound by the discretionary sentencing guidelines, underscoring that there was no agreement as to sentencing.  Here, the defendant could have been sentenced to a maximum term of incarceration of ten years.

[8] Although Holland's proffer created a factual conflict with Haley's statement to the trial court during the plea colloquy, the trial court, sitting as factfinder, was free to disregard

16

Commonwealth and was aware that she faced exposure to incarceration. From that, the trial court could have reasonably found that Holland knowingly entered her plea without making an honest mistake of fact. While Holland's proffer that she was unaware of the willfulness element of the charge constituted admissible "proof" at her plea-withdrawal motion, *see Bottoms*, 281 Va. at 27-28, the trial court, as factfinder, could reject that proffer in full or in part. *See Elliot v. Commonwealth*, 277 Va. 457, 462 (2009) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.").

Here, we have addressed each of these three statements in context. But the Court of Appeals only considered the first in a vacuum and then stopped. In particular, the Court of Appeals overlooked whether these other two bases (lack of a plea agreement and eligibility for a penitentiary sentence) supported the trial court's denial of Holland's motion. *See Hill v. Commonwealth*, 297 Va. 804, 807 (2019) (a reviewing court must presume "that the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party" as well as give "that party the benefit of all reasonably debatable inferences from the evidence"). As explained above, in this case these other grounds did validate the trial court's denial of Holland's motion. By omitting these plea colloquy statements from its consideration, the Court of Appeals artificially abridged the plea-withdrawal analysis in favor of Holland.

Finally, the Court of Appeals erred by improperly shifting the burden to the Commonwealth. It was not the Commonwealth's burden to affirmatively "combat" Holland's contention that she mistakenly entered her plea. Rather, it was Holland's burden to establish

---

Holland's statement and credit Haley's statement instead. *See Jones v. Commonwealth*, 29 Va. App. 503, 512 (1999); *see also DeLuca,* 73 Va. App. at 579-80.

17

that, on these facts, she was entitled to withdraw her plea — a burden that, on this record, the trial court could reasonably find went unmet. This is not to say that the Commonwealth never has an opportunity to submit countervailing evidence. But they are not required to do so, and the absence of such evidence here should not have been employed to prop up Holland's request to withdraw her plea.

*DeLuca,* 73 Va. 567, is illustrative. There, DeLuca pleaded guilty to six counts of taking indecent liberties with a child. *Id.* at 570. Prior to his sentencing, DeLuca moved to withdraw his pleas. *Id.* at 571. DeLuca testified at his withdrawal hearing that he had mistakenly entered his pleas because his counsel (and independent research) had caused him to believe that his sex-offender registration obligations would end after 10 years, when in fact his reporting obligations were for life. *Id.* at 572. On cross-examination, the Commonwealth played a jailhouse phone recording in which DeLuca implied that withdrawing his pleas would be advantageous because the victim may not wish to testify at trial. *Id.* As well, DeLuca could not produce any of his purported research suggesting a ten-year reporting requirement. DeLuca's counsel, however, testified that he knew DeLuca was misinformed about the reporting requirement, and that he had failed to disabuse DeLuca of that confusion. *Id.* at 573.

The trial court denied DeLuca's motion, and the Court of Appeals affirmed. *Id.* at 579-80. It deferred to the trial court's implicit factual finding that DeLuca had not moved to withdraw his pleas in good faith — despite DeLuca's and his counsel's testimony to the contrary. *Id.* at 579-80.

> Implicit in the trial court's conclusion that DeLuca's stated reason for withdrawing the pleas was a lie is a finding that the motion to withdraw was not filed in good faith. Such a conclusion not only is supported by DeLuca's prevarication, but also by the recording of the jailhouse phone call that was admitted into evidence at the hearing.

*Id.* at 579. Holland's proffers were subject to the same credibility-testing as were DeLuca's — and were equally subject to rejection by the trial court. Indeed, unlike DeLuca, Holland did not testify under oath at the plea-withdrawal hearing or otherwise submit sworn testimony from Haley. Neither did Holland provide any evidence of her reasonable defense (such as an explanation for the missing bottle of methadone, which was never recovered by police).

The Court of Appeals inverted the requirement to review the facts in the light most favorable to the Commonwealth, *see Jones*, 29 Va. App. at 512. It accepted Holland's evidence of good faith. Requiring, thereafter, contrary evidence by the Commonwealth was tantamount to conferring a duty upon the Commonwealth to present "countervailing evidence." *See Hill*, 297 Va. at 807; *see also DeLuca*, 73 Va. App. at 579-80. That requirement defeats the applicable standard of review and imposes a condition found nowhere in our precedents.

## III. CONCLUSION

For the above reasons, we reverse the judgment of the Court of Appeals and enter final judgment for the Commonwealth.

*Reversed and final judgment.*